**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sherrin Rose, | No. CV-17-08107-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Humana Insurance Company, et al., | |
| Defendants. | |

Defendants Humana Insurance Company and Humana Health Plan, Inc. ("Humana") have filed a motion to compel arbitration and stay all further proceedings. Doc. 18. The motion is fully briefed, and the Court concludes that oral argument will not aid its decision. Fed. R. Civ. P. 78(b). The Court will deny the motion.

**I.  Background.**

Plaintiff Sherrin Rose is a licensed insurance broker who specializes in the sale of insurance products to senior citizens, including Medicare insurance products. Doc. 19 at 2. In 2004, Plaintiff signed a "Group Producing Agent/Agency Contract" with Humana ("2004 Producer Agreement"), which permitted Plaintiff to market and sell Humana's Medicare products. Doc 18-2 at 5-9; Doc. 19-1 at 2-5. The 2004 Producer Agreement provides that it "may be amended at any time and from time to time by written notice from a duly authorized officer of [Humana]." Doc. 19-1 at 5 ¶ 5(H).

In 2015, Humana unilaterally modified the 2004 Producer Agreement to require arbitration of "[a]ll disputes arising out of or in any way relating to the Contract or the business relationship of the Parties." Doc. 18 at 3; Doc 18-1 at 15 ¶ 15.23(B); Doc. 18-3 at 3 ¶ 3. On November 8, 2016, Humana terminated Plaintiff. Doc. 19 at 2. Plaintiff subsequently filed this case against Humana and other defendants, alleging breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and interference with business expectancies. Doc. 5. Humana asks the Court to compel arbitration of Plaintiff's claims. Doc. 18.

## II. Legal Standard.

The Federal Arbitration Act ("FAA") "provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009) (quoting 9 U.S.C. § 2). Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Thus, "[a] party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). If a valid agreement to arbitrate encompasses the dispute, the FAA requires the court "to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

## III. Analysis.

Plaintiff argues that Humana failed to provide legally adequate notice of the arbitration amendment to the 2004 Producer Agreement. Doc. 19 at 5. Without proper notice, Plaintiff contends, she could not assent to the arbitration agreement. *Id.* at 6. Humana responds that Plaintiff received proper notice in the form of an email notification. Doc. 20 at 2-3.

When determining whether parties have agreed to arbitrate, courts apply ordinary state law contract-formation principles. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). The parties agree that Arizona law applies. Doc. 19 at 4; Doc. 20 at 2-4.

Under Arizona law, a party cannot unilaterally change the terms of a contract. *Demasse v. ITT Corp.*, 984 P.2d 1138, 1144 (Ariz. 1999) (noting the "traditional contract law" rule that, once a contract is formed, "a party may no longer unilaterally modify the terms" unless there is assent to and consideration for the offer to modify); *Yeazell v. Copins*, 402 P.2d 541, 545 (Ariz. 1965) ("A contract cannot be unilaterally modified nor can one party to a contract alter its terms without the assent of the other party."). Consequently, "to effectively modify a contract . . . there must be: (1) an offer to modify the contract, (2) assent to or acceptance of that offer, and (3) consideration." *Demasse*, 984 P.2d at 1144. Humana bears the burden of proving that the contract was validly modified. *Id.* at 1146 ("The burden is on the employer to show that the employee assented with knowledge of the attempted modification and understanding of its impact on the underlying contract."); *Yeazell*, 402 P.2d at 546 ("He who asserts the modification of a contract has the burden of proof.").

To establish assent to the modification, Humana must show that Plaintiff had "legally adequate notice of the modification." *Demasse*, 984 P.2d at 1146. "Legally adequate notice is more than the employee's awareness of or receipt of the newest handbook." *Id.* Plaintiff must have been "informed of any new term" and "aware of its impact on the pre-existing contract." *Id.* "'Proof that plaintiff has read the agreement and continued working, has been sufficient to establish consent.'" *Pinto v. USAA Ins. Agency Inc. of Tex.*, --- F.Supp.3d ---, 2017 WL 3172871, at *2 (D. Ariz. July 26, 2017) (finding sufficient evidence that plaintiff assented to arbitration agreement where plaintiff electronically signed a statement acknowledging his responsibility to read employee handbook, which contained the arbitration agreement, and plaintiff emailed employer acknowledging that he received and agreed to the arbitration agreement); *see also Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439-40 (9th Cir. 1994) (finding plaintiff

assented to arbitration where plaintiff acknowledged receiving employee handbook, which contained the arbitration agreement, and wrote a letter to his employer requesting to proceed with arbitration).

The 2004 Producer Agreement provides that Humana "may choose to communicate with [Plaintiff] through the use of mail, email, or facsimile." Doc. 19-1 at 3 ¶ 2(H). It also states that the agreement "may be amended at any time and from time to time by written notice from a duly authorized officer of [Humana]." *Id.* at 5 ¶ 5(H)(1). Humana asserts that on June 16, 2015, it emailed its contracted insurance agents regarding amendments to the 2004 Producer Agreement. Doc. 18-3 at 3 ¶ 3. Humana's compliance manager avows that this notification was emailed to Plaintiff and that "Humana's records indicate that this email was not rejected by [Plaintiff's] email server." *Id.* at ¶¶ 4-5.

Plaintiff disputes that she received the email: "at no time have I ever received any prior advance written notice, by mail or email, from Humana with the proposed amendments." Doc. 19-2 at 3 ¶ 6. Plaintiff attests that she "searched for and found no email communications from Humana with the purported . . . amendments to the [2004] Producer Agreement, including the arbitration agreement." *Id.* at ¶ 7. Plaintiff states that Humana normally sent proposed amendments by regular mail and required that she sign and return them. *Id.* at ¶ 5. Indeed, she produces a copy of such a written notice and amendment from 2011. Doc. 19-3 at 2-4.

Plaintiff further avows that she "was never aware" of these amendments until Humana produced the amended agreement as part of this litigation. Doc. 19-2 at 3 ¶ 4. Indeed, she declares:

> Had I been provided with some form of advance notice of the arbitration clause being proposed as an amendment to the Producer Agreement, I would have never agreed to the inclusion of such a clause because the arbitration clause imposes an undue burden upon me. Specifically, the arbitration clause limits the timeframe by which I can context [sic] a compensation issue to 12 months, requires me to waive my right to a jury

- 4 -

> trial, requires me to waive my right to seek redress through a class action lawsuit, and requires that any arbitration occur in Louisville, Kentucky.

*Id.* at ¶ 8.

While the 2004 Producer Agreement does permit emailing written notice of contract modifications (*see* Doc. 19-1 at 3 ¶ 2(H), 5 ¶ 5(H)(1)), Humana provides no evidence that Plaintiff acknowledged receipt of the email or that she electronically signed or authorized the proposed amendments. Humana also fails to produce the actual email it sent her, describe its contents, or even claim that it described the amendments or called attention to the arbitration provision.

Thus, even if the evidentiary dispute about whether Plaintiff received the email is set aside and Humana's evidence of sending the email is accepted as true, it shows only that an email was sent to Plaintiff and not rejected by her server. It does not show that Plaintiff read the email or the allegedly attached amendments, and it does not show that she understood the email and assented to the arbitration agreement it contained. *See Demasse*, 984 P.2d at 1146 ("Legally adequate notice is more than the employee's . . . receipt of the [modifications]."); *Pinto*, 2017 WL 317287, at *2 ("'Proof that plaintiff *has read the agreement* and continued working, has been sufficient to establish consent.'") (emphasis added); *see also Douglas v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 495 F.3d 1062, 1066 (9th Cir. 2007) (noting that "'an offeree cannot actually assent to an offer [to modify] unless he knows of its existence'").

In short, Humana has not carried its burden of establishing a valid arbitration agreement. It has not shown that Plaintiff knew about or assented to the unilateral amendment of the 2004 Producer Agreement, and, without that amendment, the agreement includes no arbitration provision.

**IT IS ORDERED** that Humana's motion to compel arbitration (Doc. 18) is **denied**. The parties shall submit a proposed revised schedule for this case within 15 days of this order (Doc. 22).

Dated this 14th day of February, 2018.

_____
David G. Campbell
United States District Judge